Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY WOCHOS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TESLA, INC., ELON R. MUSK, DEEPAK AHUJA, and JASON WHEELER,<br><br>Defendants | Case No. 17-cv-05828<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Gregory Wochos ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tesla, Inc. ("Tesla" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Tesla between May 4, 2016 and October 6, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Tesla Inc. designs, manufactures, and sells high-performance electric vehicles and electric vehicle powertrain components. The Company owns its sales and service network and sells electric powertrain components to other automobile manufacturers. It primarily offers sedans and sport utility vehicles.

3. Founded in 2003, the Company was formerly known as "Tesla Motors, Inc." and changed its name to Tesla, Inc. in February 2017. Tesla is headquartered in Palo, Alto, California, and its stock trades on the NASDAQ Global Select market under the ticker symbol "TSLA."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to Defendants' representations that the Company was prepared for the launch of its Model 3 sedan, in reality, the Company had severely inadequate inventory and was woefully unprepared to launch Model 3 sedan as anticipated; and (ii) as a result, Tesla's public statements were materially false and misleading at all relevant times.

5. On October 2, 2017, in a press release detailing the Company's vehicle production and deliveries for the third quarter of 2017, Tesla cited "production bottlenecks" as the reason for its failure to meet its production goals for its Model 3 sedan.

6. On October 6, 2017, post-market, the *Wall Street Journal* published an article entitled "Behind Tesla's Production Delays: Parts of Model 3 Were Being Made by Hand," reporting in part, that:

> Unknown to analysts, investors and the hundreds of thousands of customers who signed up to buy it, as recently as early September major portions of the Model 3 were still being banged out by hand, away from the automated production line, according to people familiar with the matter.
>
> While the car's production began in early July, the advanced assembly line Tesla has boasted of building still wasn't fully ready as of a few weeks ago, the people said. Tesla's factory workers had been piecing together parts of the cars in a special area while the company feverishly worked to finish the machinery designed to produce Model 3's at a rate of thousands a week, the people said.
>
> ***
>
> Behind the scenes, Tesla had fallen weeks behind in finishing the manufacturing systems to build the vehicle, the people said.
>
> The extent of the problem came to light on Monday when Tesla said it made only 260 Model 3s during the third quarter—averaging three cars a day. The company cited production bottlenecks but didn't explain much further.
>
> ***
>
> Inside the Fremont factory, workers said equipment for the so-called body-in-white line for the Model 3, where the car body's sheet metal is welded together, wasn't installed until by around September. They guessed at least another month of work remained to calibrate the tools.

7. Following this news, Tesla's share price fell $13.94, or 3.91%, to close at $342.94 on October 9, 2017, damaging investors.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Tesla's principal executive offices are located within this Judicial District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the accompanying Certification, purchased common shares of Tesla at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14. Defendant Tesla is incorporated in Delaware, and the Company's principal executive offices are located at 3500 Deer Creek Road, Palo Alto, California 94070. Tesla's common stock trades on the NASDAQ under the ticker symbol "TSLA."

15. Defendant Elon R. Musk ("Musk") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

16. Defendant Deepak Ahuja ("Ahuja") served as the Company's first Chief Financial Officer ("CFO") from April 2010 until 2015, returning to that position in March 2017.

17. Defendant Jason Wheeler ("Wheeler") served as the Company's CFO from November 2015 until his resignation in April 2017.

18. The Defendants referenced above in ¶¶ 15-17 are sometimes referred to- herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. Tesla Inc. designs, manufactures, and sells high-performance electric vehicles and electric vehicle powertrain components. The Company owns its sales and service network and sells electric powertrain components to other automobile manufacturers. It primarily offers sedans and sport utility vehicles.

20. The Company manufactures its vehicle products primarily at its facilities in Fremont, California, Lathrop, California, Tilburg, Netherlands and its Gigafactory 1 outside of Reno, Nevada.

**Materially False and Misleading Statements Issued During the Class Period**

21.     The Class Period begins on May 4, 2016, when Tesla issued a First Quarter 2016 Shareholder Update letter, announcing production plans for its Model 3 vehicles ("1Q 2016 Letter"). The 1Q 2016 Letter, signed by Defendants Musk and Wheeler, stated, in relevant part:

> The overwhelming demand for Model 3 confirms that compelling all-electric vehicles have mass-market appeal. In the first week of taking deposits for Model 3, we received more than 325,000 reservations despite no advertising or paid endorsements. This implies about $14 billion in future sales, making the Model 3 introduction the biggest consumer product launch ever. Since then, reservations have continued to grow to surpass even our expectations. With Model 3, our mission of accelerating the transition to sustainable transportation is more achievable than ever.
>
> ***
>
> We are on track to achieve volume Model 3 production and deliveries in late 2017. Of course, in order to meet that timeframe, we will be holding both ourselves and our suppliers accountable to be ready for volume production in advance of that timing.

22.     On May 10, 2016, Tesla filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, Tesla reported a net loss of $282.27 million, or $2.13 per diluted share, on revenue of $1.14 billion, compared to a net loss of $154.18 million, or $1.22 per diluted share, on revenue of $939.88 million for the same period in the prior year.

23.     In the Q1 2016 10-Q, the Company stated, in relevant part:

> We unveiled Model 3, a lower priced sedan designed for the mass market, in the first quarter of 2016 to significant interest.  Given this demand for Model 3, we expect to achieve volume production and deliveries in late 2017.

24.     The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Musk and Wheeler, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     On August 5, 2016, Tesla filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  For the quarter, Tesla reported a net loss of $293.19 million, or $2.09 per diluted share,

5

on revenue of $1.27 billion, compared to a net loss of $184.23 million, or $2.54 per diluted share, on revenue of $954.96 million for the same period in the prior year.

26. In the Q2 2016 10-Q, the Company stated, in relevant part:

> In addition, we are on track to achieve volume production and deliveries of Model 3 in late 2017. In order to meet that timeframe, we are holding both ourselves and our suppliers accountable to be ready for volume production in advance of that timing.  We expect our production will increase considerably each year for the next several years, and are targeting an overall vehicle production level of 500,000 vehicles, including Model S, Model X and Model 3, in 2018.  Increasing production five fold over the next two years will be challenging and will likely require additional capital, but this is our goal and we are working hard to achieve it.

27. The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Musk and Wheeler, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28. On November 2, 2016, Tesla filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").  For the quarter, Tesla reported net income of $21.88 million, or $0.14 per diluted share, on revenue of $2.29 billion, compared to a net loss of $229.86 million, or $1.78 per diluted share, on revenue of $936.79 million for the same period in the prior year.

29. In the Q3 2016 10-Q, the Company stated, in relevant part:

> In addition, we are on track to achieve volume production and deliveries of Model 3 in the second half of 2017.  We expect our production will increase considerably each year for the next several years, and are targeting an overall vehicle production level of 500,000 vehicles, including Model S, Model X and Model 3, in 2018.  Increasing production five-fold over the next two years will be challenging and will likely require additional capital, but this is our goal and we are working hard to achieve it.

30. The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Musk and Wheeler, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31. On March 1, 2017, Tesla filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016

(the "2016 10-K").  For the quarter, Tesla reported a net loss of $121.34 million, or $0.78 per diluted share, on revenue of $2.28 billion, compared to a net loss of $320.40 million, or $2.44 per diluted share, on revenue of $1.21 billion for the same period in the prior year.  For fiscal year 2016, Tesla reported a net loss of $674.91 million, or $4.68 per diluted share, on revenue of $7 billion, compared to a net loss of $888.66 million, or $6.93 per diluted share, on revenue of $4.04 billion for fiscal year 2015.

32. In the 2016 10-K, the Company stated, in relevant part:

> [I]n the first quarter of 2016, we unveiled Model 3, a lower priced sedan designed for the mass market, which received significant interest. To date, we have substantially completed the design and prototypes of Model 3 and are projecting to start production and deliveries in the second half of 2017.

33. The 2016 10-K contained signed certifications pursuant to SOX by Defendants Musk and Wheeler, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34. On May 10, 2017, Tesla filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  For the quarter, Tesla reported a net loss of $330.28 million, or $2.04 per diluted share, on revenue of $2.69 billion, compared to a net loss of $282.27 million, or $2.13 per diluted share, on revenue of $1.14 billion for the same period in the prior year.

35. In the Q1 2017 10-Q, the Company stated, in relevant part:

> In the first quarter of 2016, we unveiled Model 3, a lower priced sedan designed for the mass market. Model 3 vehicle development is nearly complete as we approach the start of initial production in July of this year. Release candidate vehicles, built using production-intent tooling and processes, are being tested to assess fit and finish, to support vehicle software development and to ensure a smooth and predictable homologation process. Road testing is also underway to refine driving dynamics and ensure vehicle durability. Simultaneously, preparations at our production facilities are progressing to support the ramp of Model 3 production to 5,000 vehicles per week at some point in 2017 and to 10,000 vehicles per week at some point in 2018. We are working closely with all Model 3 suppliers to ensure their readiness ahead of the start of production.

36. The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendants Musk and Ahuja, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37. On August 2, 2017, Tesla held an earnings call with investors to discuss the Company's financial and operating results for the quarter ended June 30, 2017. During the call, Defendant Musk discussed the production of Model 3, stating in relevant part:

> What we have ahead of us, of course, is an incredibly difficult production ramp. Nonetheless, I think we've got a great team, and I'm very confident that we will be able to reach a production rate of 10,000 vehicles per week towards the end of next year. ***And we remain – we believe on track to achieve a 5,000 unit week by the end of this year.***
>
> So, I would simply urge people to not get too caught up in what exactly falls within the exact calendar boundaries of a quarter, one quarter or the next, because when you have an exponentially growing production ramp, slight changes of a few weeks here or there can appear to have dramatic changes, but that is simply because of the arbitrary nature of when a quarter ends.
>
> ***But what people should absolutely have zero concern about is that Tesla will achieve a 10,000 unit production week by the end of next year.***
>
> So, if you can sort of see where we came from, the Roadster – we were making only 600 units a week where the non-powertrain portion of the car was made by Lotus. And we did the powertrain and final assembly of the car, and then we went from that to 20,000 units a year of the Model S, a far more complex car, where we did the whole thing. And then with Model 3, we are more vertically integrated. ***I think people should really not have any concerns that we will reach that outcome from a production rate.***
>
> (Emphasis added.)

38. On August 4, 2017, Tesla filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q"). For the quarter, Tesla reported a net loss of $336.40 million, or $2.04 per diluted share, on revenue of $2.78 billion, compared to a net loss of $293.19 million, or $2.09 per diluted share, on revenue of $1.27 billion for the same period in the prior year.

39. In the Q1 2017 10-Q, the Company stated, in relevant part:

> In July 2017, we completed our engineering, manufacturing and supply chain efforts on Model 3 product development, and commenced production of Model 3 on schedule. We are continuing preparations at our production facilities and continue to work closely with all Model 3 suppliers as we ramp to volume production.

8

40. The Q2 2017 10-Q contained signed certifications pursuant to SOX by Defendants Musk and Ahuja, stating that the financial information contained in the Q2 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

41. The statements referenced in ¶¶ 21-40 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) contrary to Defendants' representations that the Company was prepared for the launch of its Model 3 sedan, in reality, the Company had severely inadequate inventory and was woefully unprepared to launch Model 3 sedan as anticipated; and (2) as a result, Tesla's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

42. On October 2, 2017, in a press release detailing the Company's vehicle production and deliveries for the third quarter of 2017, Tesla cited "production bottlenecks" as the reason for its failure to meet its production goals for its Model 3 sedan.

43. On October 6, 2017, post-market, the *Wall Street Journal* published an article entitled "Behind Tesla's Production Delays: Parts of Model 3 Were Being Made by Hand," reporting in part, that:

> Unknown to analysts, investors and the hundreds of thousands of customers who signed up to buy it, as recently as early September major portions of the Model 3 were still being banged out by hand, away from the automated production line, according to people familiar with the matter.
>
> While the car's production began in early July, the advanced assembly line Tesla has boasted of building still wasn't fully ready as of a few weeks ago, the people said. Tesla's factory workers had been piecing together parts of the cars in a special area while the company feverishly worked to finish the machinery designed to produce Model 3's at a rate of thousands a week, the people said.
>
> ***
>
> Behind the scenes, Tesla had fallen weeks behind in finishing the manufacturing systems to build the vehicle, the people said.
>
> The extent of the problem came to light on Monday when Tesla said it made only 260 Model 3s during the third quarter—averaging three cars a day. The company cited production bottlenecks but didn't explain much further.

\*\*\*

Inside the Fremont factory, workers said equipment for the so-called body-in-white line for the Model 3, where the car body's sheet metal is welded together, wasn't installed until by around September. They guessed at least another month of work remained to calibrate the tools.

44. Following this news, Tesla's share price fell $13.94, or 3.91%, to close at $342.94 on October 9, 2017, damaging investors.

45. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tesla common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tesla common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tesla or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Tesla;

- whether Defendants caused Tesla to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tesla securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

52. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tesla common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Tesla common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants**

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Tesla and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Tesla and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58.   Tesla and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tesla common shares during the Class Period.

59.   Tesla and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Tesla were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Tesla, their control over, and/or receipt and/or modification of Tesla allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Tesla, participated in the fraudulent scheme alleged herein.

60.   Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tesla personnel to members of the investing public, including Plaintiff and the Class.

61.   As a result of the foregoing, the market price of Tesla common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Tesla's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tesla common shares during the Class Period in purchasing Tesla

common shares at prices that were artificially inflated as a result of Tesla's and the Individual Defendants' false and misleading statements.

62.     Had Plaintiff and the other members of the Class been aware that the market price of Tesla common shares had been artificially and falsely inflated by Tesla's and the Individual Defendants' misleading statements and by the material adverse information which Tesla's and the Individual Defendants did not disclose, they would not have purchased Tesla's common shares at the artificially inflated prices that they did, or at all.

63.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

64.     By reason of the foregoing, Tesla and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Tesla common shares during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act Against The Individual Defendants**

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of Tesla, and conducted and participated, directly and indirectly, in the conduct of Tesla's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tesla's financial condition and results of operations, and to correct promptly any public statements issued by Tesla which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tesla disseminated in the marketplace during the Class Period. Throughout the Class

Period, the Individual Defendants exercised their power and authority to cause Tesla to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tesla within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tesla common shares.

69. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tesla.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 10, 2017

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff