IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY WOCHOS,<br><br>    Plaintiff,<br><br>v.<br><br>TESLA, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-05828-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART REQUESTS FOR JUDICIAL NOTICE** |

This case consists of a securities action against Tesla, Inc., in which a purported class of plaintiff shareholders ("Plaintiffs") alleges that Tesla and its officers[1] ("Defendants") misled the market regarding the progress of production on the "Model 3." The Second Amended Complaint ("SAC") mostly retreads the same ground as the previous Complaint, but adds allegations that Defendants made statements that, it urges, were false as to the then-current state of affairs, and so not forward-looking statements. See Opp. (Dkt. 54) at xi. Defendants have moved to dismiss the SAC. MTD (Dkt. 49). Like the First Amended Complaint ("FAC"), the SAC fails because the statements it identifies were not false, or were forward-looking and accompanied by meaningful qualifications. The Court thus GRANTS the Motion to Dismiss. Further, because the Court concludes that any further amendment would be futile, the SAC is DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.

In addition, both parties request judicial notice of a variety of documents that Tesla filed with the SEC, public statements that Tesla made, news reports on Tesla, and Tesla's

---

[1] Tesla CEO Elon R. Musk and CFO Deepak Ahuja. Second Amended Complaint ¶¶ 41–42.

stock information. Def. Request for Jud. Notice (Dkt. 51); Pl. Resp. to Def. Request for Jud. Notice & Pl. Request for Jud. Notice (Dkt. 56). As the Court did before, see Order Dismissing Complaint with Leave to Amend ("Order") at 3–4, the Court considers the parties' proffered statements for the sole purpose of determining what representations Tesla made to the market, not for the truth of any facts asserted. The Court also does not take judicial notice of the issues of scienter, as the Court has no cause to reach that question. The Court thus GRANTS IN PART AND DENIES IN PART the Parties' Requests for Judicial Notice.

## I.  BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case as described in this Court's Order on the previous Motion to Dismiss. Order at 2, 5–9.

The Court granted the first Motion to Dismiss with leave to amend because, "while Plaintiffs claim that Tesla and its officers . . . fell short of their production goals, a firm's failure to meet projections is only actionable if the firm did not accompany those projections with meaningful qualifications. Because Plaintiffs fail to allege that Defendants made any projections that were not so qualified, their claims fail." Id. at 1.

To support the claim that Defendants misled investors about Tesla's progress in producing the Model 3, the SAC newly alleges that Defendants communicated to the public in the spring and summer of 2017 that it had a planned timeline for the automated production of the Model 3 by the end of 2017 and that that plan was on track. SAC ¶¶ 19–28, 124–26, 132–37, 239–48; Opp. at vii. Despite these statements, Plaintiffs urge, Tesla was not "on track" with that plan, and thus was conveying materially false statements to investors. Opp. at vii. The specifics of those allegations are discussed below.

## II.  REQUEST FOR JUDICIAL NOTICE

In reviewing a motion to dismiss, a district court is usually limited to the facts stated in the complaint. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.

2001). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Courts may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court previously granted Defendants' motion to take judicial notice of certain statements Tesla made to the market that were not included in the FAC for the limited purpose of determining what Tesla's representations in fact were. Order at 1, 3–4.

Defendants again ask the Court to take judicial notice as well as incorporate by reference thirty-five documents that contain public statements made by Tesla and its officers regarding Model 3 production. Request for Jud. Notice at 9; see also Bretan Decl. Exh. (Dkt. 50-1). Plaintiffs, again, object to the Court taking judicial notice of the truth of any information contained in the judicially noticed documents. Pl. Response to Def. Request for Jud. Notice (Dkt. 56) at 5–9. They argue that judicial notice of these documents is inappropriate because the Court "cannot assume the truth of statements in those documents where 'such assumptions only serve to dispute facts stated in [the] well pleaded complaint.'" Id. at 6 (quoting Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018)). They do not, however, "oppose judicial notice of the statements contained therein for the limited purpose of noting that the statements were actually made at the time and in the manner described in the SAC." Id. at 4. Plaintiffs also submit their own request for judicial notice as to three additional statements that Tesla filed with the SEC in 2018. Id. at 9–10; see also Goldberg Decl. (Dkt. 55).

Defendants' Exhibits 1–15, 17–19, 21–25, 33, and 34–36, and Plaintiffs' three exhibits are all documents that Tesla filed with the United States Securities and Exchange Commission or earnings conference call transcripts. Bretan Decl; Goldberg Decl. The

3

Court has already determined that these categories of documents are "appropriate subjects of judicial notice" because, "[g]iven that Tesla publicly filed these documents, their accuracy cannot reasonably be questioned." Order at 4; see also Fed. R. Evid. 201(b); Khoja, 899 F.3d at 1003 (publicly-disclosed reports may be properly subject to judicial notice); Dreiling v. Am. Exp. Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings properly subject to judicial notice). The Court thus considers these documents for the sole purpose of determining what representations Tesla made to the market. The Court does not take notice of the truth of any of the facts asserted in these documents.

The Court also takes notice of the articles and reports incorporated by reference in the SAC, which Defendants have included in their request for Judicial Notice. Bretan Decl. Exh. 26–31. Plaintiffs do not oppose judicial notice of these statements for the limited purpose of determining what statements Tesla made to the market. Pl. Resp. to Def. Request for Jud. Notice & Pl. Request for Jud. Notice at 4. The Court thus takes judicial notice of these exhibits for this limited purpose. The Court declines to take judicial notice of the remainder of Defendants' exhibits because they are not relevant to the Court's analysis below. See Bretan Decl. Exh. 32.

### III.    MOTION TO DISMISS

Defendants have filed a Motion to Dismiss the SAC. There are four main points of dispute: (1) whether the SAC adequately pleads falsity, (2) whether the SAC adequately pleads scienter, (3) whether the SAC adequately pleads loss causation, and (4) whether the SAC adequately pleads control person liability. As with the Order Granting the FAC, this Motion will be granted on the issue of falsity without reaching the issues of scienter or loss calculation because Plaintiffs have failed to plead any material misstatement that was not accompanied by meaningful qualification. See Order at 1. The parties also dispute whether, if the Motion is granted, Plaintiffs should be given leave to amend. Because the Court determines that further amendment would be futile, the Court denies leave to amend.

**A.     Legal Standard**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The facts pleaded must make the claim "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In addition, claims of securities fraud must be pled with particularity.  Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1).

Following dismissal, a court "should liberally allow a party to amend its pleading." Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013).  However, a court need not grant leave to amend if there is no set of facts under which the plaintiff can state a valid and sufficient claim.  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 188 (9th Cir. 1987).

Plaintiffs' claims arise under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  SAC Counts I, II; 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Section 10(b) makes it unlawful "to use or employ in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of" SEC rules.  15 U.S.C. § 78j(b).  Rule 10b-5 proscribes, in connection with the purchase or sale of any security, (1) employing any device, scheme, or artifice to defraud; (2) making a material misstatement or omission; or (3) engaging in any act, practice, or course of business which operates or would operate a fraud or deceit upon any person.  17 C.F.R. § 240.10b-5.  To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege "(1) a misrepresentation or omission of (2) material fact (3) made with intent (4) on which the plaintiff justifiably relied (5) that proximately caused the alleged loss."  Binder v. Gillespie, 184 F.3d 1059, 1063 (9th Cir. 1999).  Section 20(a) provides for joint and

several liability for violations of securities laws. See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc., 880 F. Supp. 2d 1045, 1070 (N.D. Cal. 2012).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes strict pleading requirements on a plaintiff. First, a plaintiff must identify "each statement alleged to have been misleading" and "the reason or reasons why [that statement was] misleading." 15 U.S.C. § 78u-4(b)(1). If an allegation is based on omitted facts, a plaintiff must show that it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 38 (2011) (quoting Basic v. Levinson, 485 U.S. 224, 231–31 (1988)). This falsity requirement must be plead with particularity. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009).

In addition, the PSLRA carves out a safe harbor from liability for statements that are identified as "forward-looking" and are "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i). A forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues." No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 936 (9th Cir. 2003). A projection may contain an implied factual misstatement where (1) the speaker does not actually believe the statement, (2) there is no reasonable basis to believe the statement is true, or (3) the speaker is aware of undisclosed facts that seriously undermine the statement's accuracy. Provenz v. Miller, 102 F.3d 1478, 1487 (9th Cir. 1996).

### B. Falsity

Plaintiffs argue that the SAC sufficiently alleges that Defendants made statements that are "provably false"—that is, statements about the state of the world as it was at the time the statements were made, not projections about the future. See Mot. at xi. In support of their argument that the SAC adequately pleads falsity, Plaintiffs point to the

6

following statements:

1. **"May statements"**

   a. In a May 3, 2017, filing with the SEC, Tesla stated that "[p]reparations at our production facilities are on track to support the ramp of Model 3 production to 5,000 vehicles per week at some point in 2017, and to 10,000 vehicles per week at some point in 2018." SAC ¶ 238.

   b. "In a May 10, 2017 10-Q for the first quarter of 2017 . . . the Company told investors that, regarding activity in the first quarter of 2017, that '[w]e have started the installation of Model 3 manufacturing equipment at the Fremont Factory and Gigafactory 1, and we are on-track for start of Model 3 production in July 2017.'" SAC ¶ 19; see also id. ¶¶ 119, 134, 247 (same alleged statement).

2. **"August statements"**

   a. During a conference call on August 2, 2017, Musk stated that "[a]nd we remain – we believe on track to achieve a 5,000 unit week by the end of this year," SAC ¶¶ 128, 260, and that Tesla was "making great progress on the battery front." Id. ¶ 262.

   b. That same day, August 2, 2017, Tesla filed a Second Quarter 2017 Update with the SEC, which stated that "[b]ased on our preparedness at this time, we are confident we can produce just over 1,500 vehicles in Q3, and achieve a run rate of 5,000 vehicles per week by the end of 2017." SAC ¶¶ 127, 258.

   c. In another SEC filing on August 4, 2017, Tesla stated that "[w]hile we currently believe that our progress at Gigafactory 1 will allow us to reach our production targets, our ultimate ability to do so will require us to resolve the types of challenges that are typical of a production ramp, such as those that we have experienced to date, including at Gigafactory 1." SAC ¶ 268.

7

### 1.     The May Statements

Plaintiffs argue that the May statements conveyed to the market that "best-case, Tesla required ten to eleven months from the beginning of installation to mass production." Opp. at 4–5. Plaintiffs further allege that, despite that representation, Tesla did not start installing "automated production equipment" in early May 2017. Opp. at 5; SAC ¶¶ 248. "As of May 3, 2017, therefore, Tesla could not reach mass production of the Model 3 until, at earliest, March, 2018." Id. at 5 (citing SAC ¶¶ 21, 178). So, Plaintiffs urge, Tesla's statements in May 2017 that it was "on track" to begin production were materially false. Id.

In rejecting a version of this argument before, this Court determined that statements that Tesla was "on track" "fall solidly within the category of forward-looking statements regarding plans and objectives for future operations" because, "[w]ere the Court to adopt Plaintiffs' conclusion, the distinction between present statements and forward-looking statements would collapse." Order at 9–10 (citing No. 84 Employer-Teamster Joint Council Pension Tr. Fund, 320 F.3d at 937); see also Norfolk Cty. Ret. Sys. v. Solazyme, Inc., 2018 WL 3126393, at *3 (N.D. Cal. June 26, 2018) (statement that company was "on track" was forward looking). It also determined that Tesla's statements about its progress towards reaching its production goals were accompanied by meaningful cautionary statements. See 15 U.S.C. § 78u-5(c)(1)(B); Order at 10–13.

Plaintiffs argue that that holding does not control the SAC because the newly-alleged May statements "informed investors both that installation of automated equipment would take at least four to five months . . . and the ramp up from the start of automated production to mass production would take six months." Opp. at 4. This was inconsistent, Plaintiffs urge, with Tesla's "Plan" at that point in time.

According to Plaintiffs, Defendants had a plan to mass produce the Model 3 by December 2017. Opp. at 4. Plaintiffs' basis for the claim that Tesla had a plan to being mass production around December 2017 is that a former employee, FE1, had told Musk that automated production before then would be impossible. SAC ¶ 17; Opp. at 6 n.25, 19

8

Plaintiffs argue that Defendants "verbalized" that plan, which "confirmed FE1's production plan timeline" by announcing in May that they had "started the installation of Model 3 manufacturing equipment at the Fremont Factory and Gigafactory 1, and we are on-track for start of Model 3 production in July 2017." SAC ¶¶ 18–19. So, on Plaintiffs' view, the May "on track" statements are not forward-looking because they are descriptive of Tesla's "Plan" at the time, which had a much longer timeline for automated production.

There are at least two problems with this argument. First, Plaintiffs' assertion about the existence of a "Plan" is entirely specious. There are no allegations that the timeline FE1 told Musk in 2016 was Tesla's actual timeline—or "Plan." Plaintiffs do not allege that Defendants actually made statements telling the public or investors about this above-described "Plan" to begin mass automated production in December. Reply at vii, 1–2; see also generally Breton Decl. Exhs. Nor do they identify any evidence that Tesla was operating under the timeline that FE1 suggested. See generally FAC; Opp. All that Plaintiffs offer are the May statements, which support only a conclusion that Tesla had a plan to "start Model 3 production in July 2017." SAC ¶ 119. Those statements say nothing about production goals for the end of 2017 or Tesla's timeline for <u>automated</u> production.

Pointing to the statements that Tesla was "on track" for July 2017, Plaintiffs further argue only that "[i]t is unreasonable to infer anything other than that this sentence is telling investors that production in July will be automated," and "Plaintiffs are entitled, as a matter of law, to [the] inference" that Defendants had adopted FE1's statements in 2016 about the feasibility of a timeline for full automated assembly line production as Tesla's own timeline Plan. Opp. at xii n.10. To the contrary, however, it is unclear how statements that Tesla was "on track" to start Model 3 production in July 2017 could be read as "tying July automated production to the ability to mass produce in 2017." Opp. at 10. The May statements do not say that Tesla was going to have the ability to mass produce Model 3s, only that it was on track to <u>start</u> production in July. Moreover, contrary to Plaintiffs' contention that the May statements were "telling investors" that July

9

production would be automated, Musk told investors in a May 4, 2016, earnings conference call that "[n]ow, will we actually be able to achieve volume production on July 1 next year? Of course not." Bretan Decl. Exh. 2 and 4.  Thus, although reasonable inferences must be taken in favor of Plaintiffs at this stage, Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678), these statements do not support a reasonable inference that Defendants had adopted FE1's claims about Tesla's timeline, nor that Tesla told investors that it had done so.  And the Court need not accept "unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

That leads to the second key problem with Plaintiffs' argument:  It conflates production with automated mass production.  The SAC repeatedly alleges that when Defendants referred to the initial production of the Model 3 in July 2017, Defendants meant "automated production." See SAC ¶ 20; Opp. at ix.  But the May statements that Plaintiffs identify mention only "production," not "automated production" or even "mass production." See FAC ¶¶ 19, 119, 134, 238, 247; Opp. at vii.  Plaintiffs point to no evidence that Tesla made representations about "automated" production. See Reply at 3 (citing Bretan Decl. Exh. 16 at 2) (footnote omitted).  In fact, at the July 28 handover event, Tesla displayed an S-curve graphic showing volume production first occurring in the October 2017 timeframe. Id.  There is thus simply no reason to infer that by "production," Tesla actually meant "automated production."  So Plaintiffs' arguments that the May statements were demonstrably false when they were uttered because they were descriptive of Tesla's ability at that point to have automated production up and running by July 2017 or that they were false because they were inconsistent with a plan to have automated production in December 2017 are simply unsupported by Plaintiffs' own allegations.  Tesla's statements cannot be taken to refer to the then-current state of affairs, because the statements do not contain allegations that can "demonstrably be proven false," Westley v. Oclaro, Inc., 897 F. Supp. 2d 902, 918 (N.D. Cal. 2012), on reconsideration in part (Jan. 10, 2013).  These statements are thus, as in the FAC, properly understood as

10

forward-looking.

The question then, as with the FAC, is whether the statements are "accompanied by meaningful cautionary statements" that would land them within the PSLRA's safe harbor provision. 15 U.S.C. § 78u-5(c)(1)(A)(i); Opinion at 9. On that issue, this Court has already held that Tesla did make meaningful cautionary statements. Order at 6–11. Nor do Plaintiffs now offer any argument to the contrary. See generally Opp. Thus, Plaintiffs have not met the falsity standard as to the May statements.

### 2. August Statements

Plaintiffs also point to statements in early August 2017, that Tesla believed it was "on track to achieve a 5,000 unit week by the end of this year," SAC ¶¶ 128, 260; was "making great progress on the battery front," id. ¶ 262; that it was, "[b]ased on [its] preparedness at this time, . . . confident [it could] produce just over 1,500 vehicles in Q3, and achieve a run rate of 5,000 vehicles per week by the end of 2017," id. ¶¶ 127, 258; and that "[w]hile we currently believe that our progress at Gigafactory 1 will allow us to reach our production targets, our ultimate ability to do so will require us to resolve the types of challenges that are typical of a production ramp, such as those that we have experienced to date, including at Gigafactory 1." SAC ¶ 268.

These allegations are identical to those Plaintiffs made in their FAC. FAC ¶¶ 111, 117–98, 225–27, 235. The Court found that these statements were all forward-looking and accompanied by meaningful cautionary statements. Order at 9–10. Plaintiffs offer no argument that that conclusion does not fully control here. See generally Opp.[2] So, as

---

[2] In a footnote and a parenthetical, Plaintiffs point to a statement made at a launch event on July 28, 2017 that Tesla had made "50 production cars" that month. SAC ¶ 24; Opp. at 3, 7 n.28. Plaintiffs allege that "[p]roduction car[]" is "a term of art in the automotive industry, a fact Musk, the CEO of a car-making company, knew. A 'production car' is produced by automation, such that all vehicles are identical, and offered for sale to the public. Thus, Musk told the world that the [] cars sold to buyers had been produced on an automated line in July," id., but in fact the cars made in July had been built by hand. SAC ¶¶ 25, 125. Plaintiffs argue that "the most reasonable inference to draw is that Musk was stating that Tesla had built 50 cars using automated processes," which "was a lie." Opp. at 7 n.28.
    Defendants correctly point out that Plaintiff offers no basis for its statement that "production car" is a term of art, and, even if it were, Defendants also indicated in their public

11

before, the August statements have not met the falsity standard.

Because none of Plaintiffs' new allegations alter this Court's previous Order's reasoning that the Plaintiffs have failed to meet the falsity requirement because all of the challenged statements were forward-looking and accompanied by meaningful cautionary qualifications, Order at 9–13, Plaintiffs' claims once again fail. As this Court noted the first time around, "Federal securities laws do not punish companies for failing to achieve their targets." Order at 1. And, like in the previous Order, because Plaintiffs have not alleged sufficient facts to meet the falsity standard, the Court need not address scienter or loss causation.

### C. Leave to Amend

The final issue is whether or not to grant Plaintiffs leave to amend their Complaint. Such leave is to be given "liberally," Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013), but it may be withheld where "there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" Id. (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Plaintiffs argue that if the Motion is granted, it should be with leave to amend. But they point to nothing that would affect the foregoing analysis. Rather, they seek leave to amend to include evidence of an HBO interview that Musk did in which he said that Tesla was near "death" because of its liquidity crisis, Opp. at viii n.2, and evidence of an Offering Circular, which Plaintiffs argue "provides Tesla motive to lie during the Class Period about their failure to meet their Plan's July 2017 benchmarks," id. at xii n.11. Neither of these proposed allegations is relevant to the falsity analysis, and they would not

---

disclosures that their facilities were not fully automated at the time. Bretan Decl. Exh. 19 at 32, 41–42; Mot. at 15; Reply at 6–7. And so it is unreasonable to infer from Tesla's statement at the July launch event that Tesla was representing that it had a fully completed automated assembly line. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("[U]nreasonable inferences . . . are insufficient to defeat a motion to dismiss.).

12

alter the conclusions set out in this Order and in the previous Order. Plaintiffs have already been given two bites at the apple; the Court concludes that any further amendment would be futile.

IV.   **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion to Dismiss with prejudice. The Court also GRANTS in part and DENIES in part the parties' Requests for Judicial Notice.

**IT IS SO ORDERED.**

Dated: March 25, 2019



CHARLES R. BREYER
United States District Judge